**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:18-CR-238 |
| ANTHONY CARL EDWARD MARTIN, | ) | Hon. Anthony J. Trenga |
| | ) | |
| Defendant. | ) | Sentencing: Sept. 28, 2018 |
| | ) | |

## DEFENDANT'S POSITION ON SENTENCING FACTORS

Anthony Carl Edward Martin comes before the Court to be sentenced for enticement of a minor based upon his relationship with a fifteen year old teenage girl. He now understands that she was legally (and developmentally) too young to participate in and consent to such a relationship. A relatively immature man himself, Mr. Martin faces a lengthy mandatory minimum term of imprisonment for his conduct. While there is no dispute that Mr. Martin's conduct was egregious, there is also no dispute that the minor, C.N., was a willing participant in the relationship and that she claimed to be older than she was. PSR ¶ 12 (stating that the victim "told Martin that she was 16 years old"). On these facts, the jointly-recommended sentence under the plea agreement of the mandatory-minimum sentence of 120 months, followed by intensive court supervision, would be sufficient to accomplish the purposes of sentencing.

### Background

Mr. Martin entered a guilty plea  pre-indictment to enticement of a minor to engage in sexual activity  in violation of 18 U.S.C.§ 2422(b).  In exchange for his guilty

plea, the government agreed to recommend that Mr. Martin be sentenced to the mandatory minimum of ten years imprisonment.  Plea Agreement ¶ 5.

### Objection to PSR

Mr. Martin has reviewed the Presentence Investigation Report (PSR) and offers one objection to the Guidelines' calculation, namely, application by way of cross reference found at 2G1.3(c)(1), to guideline 2G2.1, which governs production of child pornography cases.  PSR ¶ 65.   Instead, the properly-applied Guideline is 2G1.3, which governs cases involving enticement and transportation of minors, the conduct at issue here.

Specifically, Mr. Martin objects to the PSR's application of USSG § 2G2.1 by way of cross reference because he did not entice C.N. to "engage in sexually explicit conduct *for the purpose* of producing any visual depiction of such conduct." USSG § 2G1.3(c)(1) (requiring for the cross reference to apply that the sexually explicit conduct be done "for the purpose" of producing a visual depiction of that conduct) (emphasis added).  Any visual depictions that Mr. Martin has admitted to creating were created incidental to his relationship with the minor female (C.N.).  He never enticed her or traveled to see her with the purpose of creating a video or other depiction.

Therefore, as set forth above, Mr. Martin respectfully submits that the Probation Officer has incorrectly applied the cross reference found at USSG § 2G1.3(c)(1), which would then apply guideline 2G2.1, which applies to production of child pornography.  Guidelines section 2G1.3, which applies to "traveling to engage

in prohibited sexual conduct with a minor," should apply and more appropriately captures Mr. Martin's conduct and culpability.  Under that guideline, Mr. Martin's correct range is 235 to 293 months after adjustments consisting of a base offense level of 28.

## ARGUMENT

### I.    The Legal Standard

After *United States v. Booker*, sentencing is no longer a mathematical exercise. The sentencing guideline range is now advisory, and courts must consider the recommended guideline range as one of seven statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).  *Booker*, 543 U.S. 220, 259-60 (2005).

In determining a sentence, courts must impose the least amount of imprisonment necessary to accomplish the purposes set forth in 18 U.S.C. § 3553(a).[1] In the wake of *Booker*, the Supreme Court has further made clear that the guidelines cannot be used as a substitute for a sentencing court's independent determination of

---

[1]    Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 555 U.S. 350 (2009); *Spears v. United States*, 555 U.S. 261 (2009). The Court's decisions in *Nelson* and *Spears* build upon its earlier decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), establishing that the Sentencing Guidelines are simply an advisory tool to be considered alongside the other § 3553(a) statutory considerations. As the Court explained in *Nelson,* "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson*, 555 U.S. at 352 (emphasis in original). Indeed, the Court has emphasized that "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487-88 (2011) (internal quotations and citation omitted).

## II. Application of the § 3553(a) Factors

### A. *Personal History and Characteristics*

Anthony Martin is the product of an extremely traumatic childhood. Undoubtedly, Anthony's unloving, abusive, and hyper-sexualized home environment adversely impacted his emotional development and his ability to develop mature, stable relationships, though he has been fortunate to be continuously supported by his children's mother, Katherine Cerbone.

Anthony was raised primarily by his mother, who was just a teenager when he was born. Throughout his childhood, his mother invited a steady stream of different boyfriends to the home, many of whom abused young Anthony. Anthony recalls one

time when his mother and one of her boyfriends punished him by putting him in a dog kennel for several hours. PSR ¶ 97. On another occasion, when he was seven years old, Anthony's mother was so out of control that she assaulted him with a knife, cutting him in the chest. *Id*. Moreover, Anthony recalls being exposed to inappropriate sexual conduct from a very early age, including observing his mother and sister share the same sexual partner. *Id*.

It is no surprise then that, as a teenager, Anthony got into trouble and had difficulty in school. However, even today, he fondly credits one of his juvenile probation officers for encouraging him to earn his high school diploma. PSR ¶ 98. This seemingly small but significant achievement given Anthony's upbringing show how starkly different his life could have been had he had the benefit of more nurturing adult attention growing up.

Indeed, against all odds, as an adult, Anthony developed an enduring and mature relationship with Katherine Cerbone, the mother of his children. Ms. Cerbone sees the good in Anthony while acknowledging the obstacles he has overcome. As she told the probation officer, Mr. Martin is a "good father and person" and that despite the offense conduct, she will "continue to support him in any way she can." PSR ¶ 94. In her letter to the Court, Ms. Cerbone writes, "Anthony is an amazing, wonderfully caring man." Letter from Katherine Cerbone, attached at Exh. 1.

**B.      Circumstances of the Offense**

In late 2016, Anthony began communicating with C.N. using Kik Messenger (Kik), an instant messaging mobile application.  They met on a group chat for those interested in flirtatious contact.   Nothing about the group chat indicated it was open to minors.  The tenor of the initial messages was flirtatious.  As time went on, each expressed mutual romantic and sexual interest in the other.  Although she was 15 years old, C.N. told Anthony that she was 16 years old.  PSR ¶ 12.

Their online relationship escalated to almost daily conversations, texting, video chatting, and messaging.  C.N. later told law enforcement that she and Anthony were boyfriend and girlfriend.   PSR ¶ 13.  During their communications, C.N. sent sexual photographs to Anthony.  After receiving them, he did not distribute them or display them in any way.  The communications between the two reflect that they were both willing participants in the relationship, with C.N. frequently initiating intimate and sexual conversations.  *Id*.

In March, 2017, C.N. asked Anthony to pick her up because she had been kicked out of her house.  At her request, he picked her up in Virginia and took her back to Ohio, where he lived with his child and his partner, Ms. Cerbone.  After law enforcement returned C.N. to Virginia, she continued to contact Anthony.  When he did not respond, she sent persistent and often sexually explicit messages to him and Ms. Cerbone.[2]

---

[2]      Anthony perceived some of these messages to be threatening to him and his family.

In addition, C.N. sent messages to Anthony and Ms. Cerbone in which she pretended to be counselor or therapist working with her, apparently in an attempt to attract attention from Anthony.   Indeed, citing her difficult home-life, C.N. initiated another trip to Ohio to live with Anthony and Ms. Cerbone.  In this instance, after a frantic call from C.N., Ms. Cerbone and Anthony traveled to pick her up.  While Anthony should have ignored C.N's entreaties and discontinued all contact, he was admittedly interested in having a new sexual partner who appeared to be very experienced.  And, as someone who had experienced childhood trauma and neglect, he genuinely cared for her well-being and empathized with her difficult childhood as a result of his own upbringing.

Anthony has admitted to having a sexual relationship with C.N. which he hid from Ms. Cerbone and which he appreciates was wrong.   However, there is no indication that the relationship was physically violent or forced upon C.N.  While C.N.'s motivations for sending her messages and her persistent efforts to pursue a relationship with him are no defense to Anthony's actions,[4] the nature of the relationship show that Anthony is not a predator, he is not violent, and he does not harbor a fetish for minors.   He had inappropriate and illegal contact with one teenager who sought out an adult relationship with him.  He understands now how

---

[4]    C.N. has a sad history of troubling behavior regarding sex.  According to discovery provided by the government, when she was just 14 years old (before she met Mr. Martin) C.N. pleaded guilty to making a false police report stemming from a fabricated allegation that a classmate had sexually assaulted her.  *See* Affidavit in support of arrest warrant.

immature and wrong he was to put aside her age when thinking of her as someone with whom he could have a meaningful relationship.

The fact is, despite C.N.'s behavior, she was not an adult and could not consent to an adult relationship.  With his own background of childhood abuse and neglect, he should have known better, and he now acknowledges belatedly that he, of all people, should have taken extra steps to be an adult presence of stability rather than a sexual partner.  As discussed above, Anthony grew up in a hyper-sexualized home and he is beginning to appreciate the trauma of early inappropriate exposure to sexual behavior.  He is deeply remorseful, accepted responsibility early in the process, and regrets harming C.N. and contributing to the trauma C.N. has suffered throughout her youth.

**C.** *The Advisory Sentencing Guidelines*

As already noted, the statute of conviction in this case requires a lengthy sentence in all cases.  By recommending a range two to three times the substantial mandatory minimum sentence (10 years), the Sentencing Guidelines as applied to Mr. Martin—who has accepted responsibility, has not engaged in violence or force, and whose conduct did not involve extremely young minors—are of far less significance than the other sentencing factors..  This is because the Guidelines are fundamentally incompatible with the parsimony provision of 18 U.S.C. § 3553(a).

Courts around the country and the Sentencing Commission itself have come to the conclusion that the production Guideline—which Mr. Martin asserts has been incorrectly applied in this case—is so harsh as to result in advisory ranges near the

top of the sentencing chart for even non-violent offenders, affording scant distinction between types of offense conduct. *See* USSC Rep., Executive Summary, at ii (sentencing data indicates growing number of courts believe sentencing scheme for child pornography offenses is overly harsh); *id.* at xvii (percentage of within-guideline sentences for production offenders decreased steadily from 2004 to 2011, when only half of production sentences were within the range). Indeed, in the latest year for which statistics are available, nearly 60% of production cases resulted in downward variances. *See United States Sentencing Commission, 2017 Sourcebook of Federal Sentencing Statistics,* Table 28 (of 462 offenders sentenced under USSG 2G2.1 in 2017, 22 received reductions for substantial-assistance or above-range sentences; of the remaining 440, only 170 cases resulted in within-range sentences while 270 resulted in below-range sentences).[5]

Similarly, less than half of defendants sentenced under the enticement guideline, 2G1.3, received within-guidelines sentences. Of the 403 offenders sentenced under 2G1.3 in 2017, 179 cases resulted in within-guidelines sentences, 59 cases resulted in substantial -assistance sentences, and 147 cases sentenced under 2G1.3 resulted in below-range sentences. *Id.*

In other words, as this case illustrates, the Sentencing Guidelines simply fail to meaningfully differentiate between offenders in these classes of cases. Moreover, they effectively contradict the statutory mandate to impose the minimally-sufficient

---

[5]     Available at < https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table28.pdf>.

sentence in each case that accomplishes the purposes of sentencing. Accordingly, this Court should give little weight to the advisory sentencing range.

### D. The Need to Avoid Unwarranted Sentencing Disparities

The mandatory minimum sentence of 120 months is consistent with other strikingly similar cases in this district. For example, in *United States v. Delgado*, 1:17-CR-11 (JCC), the Court imposed a 120 month sentence for a 26-year-old defendant convicted of transportation of a minor in violation of 18 U.S.C. 2424 (a) who had a sexual relationship with a 13 year old girl and encouraged her to lie about it. In *United States v. Hernandez* (cite) (CMH), a 22-year-old defendant who had sexual intercourse with a teenage girl he met online was also sentenced to 120 months. Similarly, in *United States v. Feliciano*, 1:14-CR-261 (GBL), a 50-year-old defendant was sentenced to 90 months for traveling three times to meet a 13-year-old whom he met online. In *United States v. Rudy Cante Rivera*, 1:08-CR-402 (TSE) the 25-year-old defendant was sentenced to 57 months for traveling to have sexual intercourse—and having sexual intercourse—with a 15-year-old minor.

By contrast, this Court has imposed sentences above 120 months for defendants convicted of offenses involving sexual abuse of minors where the conduct was aggravated in some respect. For example, in *United States v. Sara*, 1:17-CR-54 (AJT), the 63-year-old defendant was sentenced to 14 years (168 months) for sending money to the Philippines for the purpose of engaging in sexual conduct with an 8-year-old minor participating in live-stream webcam sessions involving young children engaging in sexually explicit conduct. Likewise, in *United States v. Valesquez*, 1:13-

CR-89 (AJT), the Court imposed a sentence of 16 years (192 months),  upon a 25-year-old defendant who: (a) blackmailed a minor into stripping and masturbating online over a webcam so that he could make video recordings of her, (b)  convinced other minors to engage in sexually explicit conduct on webcams so that he could produce child pornography, (c) traveled to see at least one minor he enticed online, (d)  had previously been convicted of sexual intercourse with a child 16 years or older in Wisconsin just seven years before his federal offense, (e) fled the jurisdiction after being released pretrial, and (f) admitted to having gotten back online while a fugitive.

Finally, in *United States v. Friedel*, 1:14-CR-383 (TSE), the Court imposed a sentence of 16 years (192 months),  upon a 29 year-old defendant who had enticed at least 5 minors to take and send him sexually explicit images of themselves, including one who he enticed to actually have sex with him (events that he recorded in videos and images), one to whom he distributed other child pornography, and multiple minors he threatened with exposure, jail, and parental abandonment if they did not cooperate with his demands.

Of course, no two cases are identical.  However, the above cases show that defendants who receive sentences longer 120 months engaged in some conduct that was aggravating such as engaging in deception or threats to persuade minors to produce pornography or attempting to sexually abuse very young children.  The 120 month sentence that the parties agreed to recommend for Mr. Martin's conduct – participating in a non-violent and non-forcible relationship with a teenager – is appropriate  in light of other sentences imposed in this district for similar conduct.

11

### E. *The Need to Impose a Sentence that Achieves Deterrence and Promotes Respect for the Law*

Mr. Martin is 28 years old.  While he has a criminal record, most of his record stems from when he was juvenile and is indicative of the abuse and neglect he endured as a youth.  If this Court imposes the mandatory minimum sentence of ten years, it will represent the longest sentence he has ever served.  Following his sentence, he will no doubt be subject to a significant period of supervised release thereafter and he will have to register as a sex offender.  As a result, Mr. Martin will not just face the burdensome  obstacles confronted by all felons returning to society, but the even more significant challenges confronted by someone who is a registered sex offender.  These substantial consequences in additional to a 10-year prison term are more than sufficient to punish Mr. Martin for his conduct and to send a commanding message of deterrence.  Even the Department of Justice acknowledges that longer periods of incarceration do not result in increased deterrence.  *See* USDOJ, National Institute of Justice, *Five Things About Deterrence* ("Increasing the severity of punishment does little to deter crime.").[6]

### Conclusion

For the reasons stated herein, Mr. Martin respectfully requests that the Court impose a sentence of 120 months, in accordance with the agreement between the parties.

---

[6]      Available at <
https://cdpsdocs.state.co.us/ccjj/Resources/Ref/NIC5Things_2014-07.pdf>.

Mr. Martin agrees with the PSR that he unable to pay a fine and respectfully requests that the Court recommend a BOP facility located in Florida.

Respectfully Submitted,

Anthony Carl Edward Martin
By Counsel,

Geremy C. Kamens,
Federal Public Defender

By:


_____/s/_____

Elizabeth Mullin
Virginia Bar No. 86668
Attorney for Defendant

Office of the Federal Public Defender

1650 King Street, Suite 500
Alexandria, VA   22314
(703)600-0800 (telephone)
(703)600-0880 (facsimile)
elizabeth_mullin@fd.org

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2018, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

>
> Alex Blanchard
> United States Attorney's Office
> 2100 Jamieson Avenue
> Alexandria, VA  22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the forgoing pleading will be delivered to Chambers within one business day of the electronic filing.


_____/s/_____

Elizabeth Mullin
Virginia Bar No. 86668
Attorney for Defendant