IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:18-cr-00238 |
| | ) | |
| v. | ) | The Honorable Anthony J. Trenga |
| | ) | |
| ANTHONY CARL EDWARDS MARTIN, | ) | Sentencing: September 28, 2018 |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, through undersigned counsel and in accordance with 18 U.S.C. § 3553(a) and the U.S. Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G."), hereby provides its position with respect to sentencing for defendant Anthony Carl Edwards Martin. The government has reviewed the Pre-Sentence Investigation Report (the "PSR") and concurs with the findings of the Probation Office, which has correctly calculated Martin's sentencing range to be 292 to 365 months. In keeping with its agreement to do so in the plea agreement, *see* Dkt. No. 23 at ¶ 5, the government respectfully recommends that the Court vary below that range and sentence Martin to a total term of imprisonment of 120 months to be followed by a term of supervised release of five years.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. Origins of Martin's Online Relationship with the Minor Victim

In late 2016, Martin began communicating with a female juvenile (the "minor victim") using Kik Messenger ("Kik"), an instant messaging mobile application. The minor victim, who was in fact 15 years old at the time, told Martin that she was 16 years old. Martin, who was in fact 26 years old, told the minor victim that he was 19 years old. Over the course of approximately two months thereafter, Martin and the minor victim communicated with one another via telephonic

conversations, text messaging, live video chatting, and messaging using, among other applications, Kik. During their conversations, Martin and the minor victim talked about sex. Additionally, Martin sent photographs of his penis to the minor victim, and, at Martin's request, the minor victim sent him naked photographs of herself, to include her breasts and vagina.

### B.  Martin's First Trip to Virginia to See the Minor Victim

On March 1, 2017, the minor victim, using Kik, asked Martin when he was going to come get her.[1] In response, Martin wrote, "I think you wanna fuck lol." Ex. 1 at 4. They proceeded to discuss Martin traveling from Fairborn, Ohio, where he was living, to Alexandria, Virginia, where the minor victim was living. Their Kik conversations included discussion about having sexual intercourse upon meeting for the first time.

On March 2, 2017, the minor victim sent Martin, at his request, photographs of her exposed breasts and labia. Ex. 1. at 7-9.[2] At one point, Martin wrote that "these pics getting me hard and shit." *Id.* at 9. Their conversation continued as follows:

---

[1] In January 2018, the minor victim provided consent to the Alexandria Police Department to conduct a forensic examination of a cellular phone that she was using in March 2017. Among the data recovered from that device is a string of deleted Kik messages between the minor victim and username "spadecrush," the owner of which is listed as "ACE Spades." Information subpoenaed from Kik revealed that the email address registered to the "spadecrush" account is antmartin0520@gmail.com. On December 1, 2017, the Honorable John F. Anderson, United States Magistrate Judge for the Eastern District of Virginia, issued a search warrant for the contents of Martin's Facebook account. Information returned by Facebook pursuant to that warrant revealed that one of the four email addresses registered to Martin's account is antmartin0520@gmail.com. The Kik correspondence between Martin and the minor victim during the period that Martin committed the offense of conviction is attached hereto as Exhibit 1. Where that correspondence includes thumbnail images containing nudity or the lascivious displaying of genitalia, or where it includes information that would reveal the identity of a juvenile, the material has been redacted.

[2] The images themselves were successfully deleted and, therefore, not recoverable from the minor victim's phone. However, that she sent photographs to Martin, and what those photographs depicted, is clear from the content and context of the deleted messages recovered.

2

| | |
|---|---|
| Minor Victim: | "[You] [g]onna see [my vagina] in real life" |
| Martin: | "And maybe more than see lol" |
| Minor Victim: | "Yeah" |
| Martin: | "I'm going in as soon as I pick you up" |
| Minor Victim: | "Lmao" |
| Minor Victim: | "Lmao people say high sex is so good" |
| Martin: | "I'm bringing weed to lol" |

*Id.* at 10.

On March 3, 2017, Martin, accompanied by another adult male, began driving from Ohio to Virginia to meet the minor victim. While he was en route, he engaged in the following back-and-forth with the minor victim:

| | |
|---|---|
| Minor Victim: | "Lmao dick" |
| Martin: | "What about it" |
| Minor Victim: | "U wanna give me dick?" |
| Martin: | "Maybe lol" |
| Minor Victim: | "Lol" |
| Martin: | "I'm saying you can get it" |

*Id.* at 27-28.

In the early morning hours of March 4, 2017, Martin met the minor victim in a room at the Quality Inn Mount Vernon, located in Alexandria, Virginia, where the two proceeded to have oral and vaginal sex. After she had sex with Martin, the minor victim willingly left the hotel room and, along with Martin, entered a vehicle being driven by the adult male who had accompanied Martin on his trip from Ohio. Thereafter, the three of them drove back to Ohio.

3

After arriving at Martin's residence in Fairborn, Ohio, the minor victim learned that Martin had two children and that his fiancée, Katherine Cerbone, who was pregnant with Martin's child, still lived with Martin. The minor victim also learned at this time that Martin was actually 26 years old.

Once they were in Ohio, Martin used Kik to ask the minor victim to send him explicit photographs and videos. On March 9, 2017, Martin twice asked the minor victim, "where my pics at[?]" *Id.* at 45-46. Complying with his request, the minor victim used Kik to send Martin a photograph of her exposed breasts and a photograph of her exposed labia. Immediately thereafter, she and Martin engaged in the following conversation:

| | |
|---|---|
| Martin: | "You so sexy I wanna be in you" |
| Minor Victim: | "I want u inside me so bad baby" |
| Martin: | "Your pussy look wet af why didn't you open it for me" |
| Minor victim: | "I'll do it now baby" |

*Id.* at 47-48. At this point, the minor victim used Kik to send Martin a video of her spreading her labia with her fingers and inserting a finger into her vagina. The conversation between them proceeded as follows:

| | |
|---|---|
| Martin: | "I want some" |
| Minor Victim: | "U can have some" |
| Martin: | "Hopefully [Cerbone] will go to work tm and I can fuck you while she gone lol" |

*Id.* at 48. Later that morning, Martin sent the minor victim a message reading, "We gotta make sure you don't get pregnant tho with as much as we fuck." *Id.* at 49.

On March 12, 2017, law enforcement officers responded to a report of a domestic disturbance at Martin's residence. The officers discovered that the minor victim had been reported

4

as a missing child in Virginia and that she had an outstanding probation violation warrant.[3] The minor victim was taken into custody, detained, and eventually extradited to Virginia on March 25, 2017.

### C. Martin's Second Trip to Virginia to See the Minor Victim

On March 27, 2017, the minor victim appeared in the Fairfax County Juvenile and Domestic Relations District Court for a hearing, during which the court appointed a guardian ad litem and ordered the minor victim to report to Shelter Care. While the minor victim's guardian ad litem was walking the minor victim over to the Shelter Care facility adjacent to the courthouse, the minor victim fled. After absconding, she called Martin and asked him to come get her. Eventually, Martin and Cerbone arrived and picked up the minor victim from her friend's house in Fairfax County, Virginia, after which Martin, Cerbone, and the minor victim all drove back to Ohio.[4]

On April 3, 2017, law enforcement officers in Fairborn, Ohio, again found the minor victim at Martin's residence and took her into custody. On April 21, 2017, she was extradited to Virginia.

---

[3] In January 2016, when she was 14 years old, the minor victim pled guilty to making a false police report stemming from her allegation, later proven to have been fabricated, that a classmate had sex with her against her will.

[4] In the letter she has submitted in support of Martin, Cerbone maintains that the minor victim, when she met her, "appeared to be and act[ed] like an adult." Dkt. No. 29-1 at 2. Contemporaneous communications, however, belie that claim. Among the records returned by Facebook pursuant to the aforementioned search warrant for Martin's account are messages exchanged between him and Cerbone, including messages in which they are arguing about the minor victim. On March 4, 2017, Cerbone sent Martin a message saying, "I know she ain't 16 . . . ." Martin responded by sending Cerbone a photograph of what Martin described as the minor victim's "school transfer papers or whatever," including "her name and birthday." Thereafter, Martin told Cerbone that the minor victim was 16 years old, but the document appearing in the photograph he sent to Cerbone includes the minor victim's true name and birthdate, the latter of which establishes that, as of March 2017, she was 15 years old.

### D. Martin's Third Trip to Virginia to See the Minor Victim and Creation of Sex Tape

Upon her return to Virginia, the minor victim continued her online relationship with Martin, which included video chatting and the exchange of photographs via the internet. On June 19, 2017, Martin and the minor victim met in a room at a Super 8 motel in Alexandria, Virginia. There, they had vaginal intercourse, a portion of which Martin filmed using his cellular phone. The minor victim did not consent to being videotaped.

### E. Martin's Arrest and Guilty Plea

On April 10, 2018, Martin was arrested outside of his home in Pensacola, Florida. At the time of his arrest, Martin was carrying a red Apple iPhone 7 Plus, Model MPRO2LL/A, bearing IMEI number 355835086191196 and serial number F2LTFNYRHX9F (the "iPhone"), which law enforcement ultimately seized.

On June 14, 2018, Martin waived indictment and pled guilty to a single-count criminal information charging him with unlawfully and knowingly using any facility and means of interstate or foreign commerce to coerce and entice an individual who had not attained the age of 18 years to engage in any sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).

## II. GUIDELINES CALCULATIONS

As the Court well knows, although the Guidelines are advisory, sentencing courts must consult those Guidelines and take them into account when sentencing. *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing a court must first calculate the Guidelines range applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009).

This case presents a threshold question regarding from which Guidelines section, as between § 2G1.3 and § 2G2.1, the base offense level and specific offense characteristics should

be derived. Typically, the guideline for a violation of 18 U.S.C. § 2422(b) is U.S.S.G. § 2G1.3, and it is this guideline that Martin contends should apply here. *See* Dkt. No. 29 at 2-3. However, § 2G1.3 includes a cross reference that states, "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," the applicable guideline is instead § 2G2.1, so long as the resulting offense level under that guideline is greater than the offense level under § 2G1.3.[5] U.S.S.G. § 2G1.3(c). The government agrees with the U.S. Probation Office's conclusion that, pursuant to this cross reference, the applicable guideline in Martin's case is § 2G2.1. That is because both of the aforementioned prerequisites are present.

*First*, the offense of conviction "involved causing . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."[6] Specifically, as recounted in paragraph 9 of the statement of facts, *see* Dkt. No. 24, Martin used Kik to persuade the minor victim to send him explicit photographs of herself and a video of herself masturbating. *See* U.S.S.G. § 2G1.3 comment. n.5(A) ("The cross reference in subsection (c)(1) is to be construed *broadly* and includes *all* instances in which the offense involved . . . persuading . . . a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." (emphasis added)); *see also United States v. Bohannon*, 476 F.3d 1246, 1251

---

[5] A cross reference refers to the entire offense guideline, including the base offense level and specific offense characteristics. U.S.S.G. § 1B1.5(a). Where, as here, a cross reference directs that another guideline be used if it results in the greater offense level, the greater offense level means the greater Chapter Two offense level. *Id.* § 1B1.5(d).

[6] The Application Notes to § 2G2.1 provide that "sexually explicit conduct" has the meaning given that term in 18 U.S.C. § 2256(2). That statute defines sexually explicit conduct as, among other things, "actual or simulated . . . masturbation . . . or . . . lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A).

7

(11th Cir. 2007) (stating that the term "offense," as used in § 2G1.3(c), includes both charged and uncharged offenses).

There can be no serious dispute that the primary purpose of Martin's Kik messages at that time was to produce a visual depiction of the minor victim engaging in sexually explicit conduct. After all, he expressly asked her to send him "pics" and then complained that the initial masturbation video that she sent would not play, prompting her to resend one that did play. Ex. 1 at 48. But even assuming, for purposes of argument, that the production of a visual depiction of the minor victim engaging in sexually explicit conduct was merely a secondary purpose of Martin in committing the offense, the cross reference would still apply. *See United States v. Veazey*, 491 F.3d 700, 707 (7th Cir. 2007) ("The guideline and Application Notes make clear that the cross-reference should apply if any one of the defendant's purposes in committing the offense was to create a visual depiction thereof.").

*Second*, the offense level under § 2G2.1 is greater than the offense level under § 2G1.3, as the following comparison, which computes the Chapter Two offense level under both scenarios, demonstrates:

| **§ 2G2.1** | | **§ 2G1.3** | |
|---|---|---|---|
| § 2G2.1(a) | 32 | § 2G1.3(a)(3) | 28 |
| § 2G2.1(b)(2)(A) | +2 | §§ 2G1.3(b)(2)(A) and (B) | +2 |
| § 2G2.1(b)(6)(B)(i) | +2 | § 2G1.3(b)(3)(A) | +2 |
| | **36** | § 2G1.3(b)(4)(A) | +2 |
| | | | **34** |

For these reasons, the government has met its burden of demonstrating by a preponderance of the evidence that the cross reference at § 2G1.3(c)(1) applies. *See United States v. Blauvelt*,

638 F.3d 281, 293 (4th Cir. 2011) ("The district court makes an enhancement determination based on a preponderance of the evidence standard."); *Bohannon*, 476 F.3d at 1251 ("The burden is on the government to prove the factors that trigger the cross-reference . . . ."). Ultimately, the government agrees with the U.S. Probation Office that the calculation of the appropriate offense level for Martin is as follows:

| | |
|---|---:|
| <u>Base Offense Level</u> (§ 2G2.1(a)) | 32 |
| <u>Specific Offense Characteristics</u>: | |
|     Offense involved a sexual act (§ 2G2.1(b)(2)(A)) | +2 |
|     Offense involved, for the purpose of producing sexually explicit material, the use of an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of a minor, to engage in sexually explicit conduct (§ 2G2.1(b)(6)(B)(i)) | +2 |
| <u>Acceptance of Responsibility</u>: | |
|     Clear demonstration of acceptance of responsibility (§ 3E1.1(a)) | -2 |
|     Timely notification of intention to plead guilty (§ 3E1.1(b)) | -1 |
| <u>Repeat and Dangerous Sex Offender Against Minors</u>: | |
|     Offense is a covered sex crime, neither § 4B1.1 nor § 4B1.5(a) applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct (§ 4B1.5(b)(1)) | +5 |
| **Total Offense Level** | **38** |

Because Martin's properly calculated criminal history category is III, the resulting Guidelines range is 292 to 365 months.

### III.   SECTION 3553(a) FACTORS

As the Court is also well aware, after calculating the applicable Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), and determine a sentence that is appropriate and reasonable for the individual

9

defendant. *See Nelson*, 555 U.S. at 351; *see also United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006) (stating that the sentencing court must "fulfill the congressionally established objectives for sentencing: promoting respect for the law; providing just punishment for the offense; affording adequate deterrence; protecting the public from further criminal activity of the defendant; providing the defendant training, medical care, and correctional treatment; and providing restitution to victims"). Based on those factors, a term of imprisonment of 120 months is reasonable in this case.

The conduct that brings Martin before the Court, as he himself now concedes, and as summarized in Part I., *supra*, was "despicable." Dkt. No. 29-2 at 2. He preyed upon a 15 year-old child, persuading her to send him explicit photographs and videos, enticing her into having sexual intercourse with him, and filming the two of them having sex without her consent. His protestation that she had said that she was 16 years old matters little in light of the fact that he, despite telling her that he was 19 years old, would still have been 10 years her senior had she been telling the truth.[7] Similarly, Martin's self-serving claim that the minor victim "sought out an adult relationship with him," Dkt. No. 29 at 7, simultaneously shifts blame onto her and erroneously implies, despite his ostensible acknowledgement to the contrary, *id.* at 1, 8, that she possessed the maturity, forethought, experience, emotional stability, and volition necessary to make that assertion true.

Left in the wake of Martin's selfish actions are two families torn asunder. The minor victim, in part because of the distressing nature of her relationship with Martin, has battled suicidal

---

[7] And in any event, *before* their sexual relationship ended, Martin came to learn that the minor victim had actually been 15 years old when they first had sex. In a Facebook message that he sent to Cerbone on May 3, 2017, which was before the minor victim's 16th birthday, Martin wrote, "now you want me because you think I want a 15yr old . . . ."

ideation and currently resides at a trauma-based behavioral health facility where she receives individual therapy three times daily.  As the victim-impact statement that she could barely bring herself to write attests, the minor victim struggles with feeling betrayed and unable to trust anyone in her life.  Echoing the pain reflected in that statement is the statement submitted by the minor victim's single, working mother who describes the anguish, fear, and disgust this ordeal has inflicted upon her.  As she aptly points out, the minor victim lacked a father figure in her life and Martin exploited that absence to gain her trust.  Having done so, he has left the minor victim and her mother, as the latter put it, forever scarred.

However, they are not the only ones negatively affected by Martin's transgressions.  Cerbone, his fiancée, will now have to face, for at least the next decade, the daunting task of raising five children, four of whom are under three years old, without Martin around to help or contribute money.  For a man who has had no contact with his father since he was young, *see* PSR at ¶ 95, and who has suffered the consequences of familial instability, Martin should have known better than to engage in conduct that risked forcing his own children to endure similar insecurity.

Beyond the nature, circumstances, and consequences of Martin's crime, the sentence that this Court imposes on Martin must also take into account the need for general and specific deterrence.  Individuals like Martin who engage in inappropriate relationships with minors, whether online or in person, must know that they will be held responsible and duly punished.  Moreover, Martin needs a sentence that will prevent him from ever again becoming involved with minors in the ways that have brought him to the attention of law enforcement to date.[8]

---

[8] Among the discovery produced to the defense prior to Martin's entry of his guilty plea was a police report from the Escambia County Sheriff's Office in Pensacola, Florida.  The report, which is dated August 24, 2010, reflects that the Sheriff's Office had been called by a woman who reported that her 14 year-old granddaughter had been having sex with Martin, who at the time was 20 years old.  The woman said that her granddaughter had admitted this to her and that she had

While there is no excuse or justification for the crime he committed, the government acknowledges that Martin's own childhood was traumatic, marred by physical and emotional abuse at the hands of, among others, his own mother who seemed practically to delight in her son's degradation. *See* PSR at ¶ 97. Moreover, as his letter to the Court reflects, he appears to have genuinely accepted responsibility for his actions. And finally, as Martin points out, many cases that might fairly be deemed comparable to his—in terms of the number of victims, the victim's age, the number of pornographic images produced, the extent to which physical violence or threats were employed, and the number and nature of other aggravating factors—have resulted in variance sentences well below the defendants' Guidelines ranges.

\* \* \*

For these reasons, the government agree with Martin that the mandatory minimum sentence is appropriate.

## IV.  CONCLUSION

The government asks this Court to impose a sentence of 120 months. Such a sentence would account for the nature of Martin's crime, promote respect for the law, and provide the requisite level of specific and general deterrence. Regarding supervised release, the government recommends a term of five years. Finally, at the sentencing hearing, the government will submit an order of forfeiture for the iPhone mentioned above, which constitutes an instrumentality of his offense of conviction.

---

previously seen her granddaughter and Martin lying in bed together. The reporting Sheriff's Deputy spoke with the granddaughter who explained that she and Martin had been dating for approximately seven months and that, when they had started having sex, she was 13 years old and Martin was 19 years old. Although the grandmother wished to press charges against Martin, the granddaughter said that her sexual activity with Martin had been consensual and that she did not want to press charges. Because the granddaughter advised that she was no longer seeing Martin, and in light of the Sheriff's Deputy's inability to contact him, the case was never pursued.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____
Alexander E. Blanchard
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3818
Fax: (703) 299-3980
alexander.blanchard@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record. I further certify that on September 21, 2018, I sent a copy of the foregoing to the Probation Officer assigned to this matter:

Tracey M. White
Senior U.S. Probation Officer
Eastern District of Virginia
Tel.: (703) 299-2267
Tracey_White@vaep.uscourts.gov

/s/
Alexander E. Blanchard
Assistant United States Attorney